UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
RONALD J. HEDGES
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING, JR.
FEDERAL BUILDING AND COURTHOUSE
50 WALNUT STREET
NEWARK, NJ 07101
973-645-3827

March 13, 2007

**LETTER-OPINION AND ORDER**
**ORIGINAL FILED WITH CLERK OF THE COURT**
**INTRODUCTION**

Joshua S. Bratspies
Riker, Danzig, Scherer,
Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962

Steven R. Klein
Cole, Schotz, Meisel,
Forman & Leonard, PA
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800

> **ADP, Inc. v. PMJ Enterprises, LLC**
> **Civil Action No.: 06-2042 (PGS)**

**INTRODUCTION**

This matter comes before me on the motion of Plaintiff ADP Commercial Leasing, LLC ("ADP"), to disqualify the law firm of Cole, Schotz, Meisel, Forman & Leonard, PA ("Cole Schotz) as counsel for defendant PMJ Enterprise, LLC ("PMJ").  PMJ opposes the motion.  The motion was referred to me by Judge Sheridan.  I have considered the papers submitted in support

1

of and in opposition to the motion.  There was no oral argument.  Rule 78.

## BACKGROUND

ADP is a designer and provider of integrated computer operating systems that automobile dealerships use to manage their day-to-day operations.  It is a Delaware corporation with a principal place of business in New Jersey.  PMJ owns and operates a Lincoln Mercury dealership.  It is incorporated and has a principal place of business in Florida.  Between 2002 and 2005 the parties entered into agreements pursuant to which ADP leased to PMJ a computer operating system.

ADP alleges that sometime in the fall of 2005 PMJ defaulted under the terms of the parties' agreements by failing to make payments due to ADP.  In 2006, ADP decided to sue PMJ to collect the amounts PMJ allegedly owes it and began looking for attorneys.  ADP developed an interest in retaining Steven Klein, a partner at Cole Schotz, as counsel because it was "impressed with the types of cases he handles" (Sudha Kantor Dep. 17:5) and believed his "credentials were along the lines of what [ADP] was looking for." (Kantor Dep. 46:4-5).  On April 24, 2006, ADP's in-house counsel, Sudha Kantor, telephoned Edward Kiel, a partner at Cole Schotz with whom she was acquainted.  Kantor expressed to Kiel ADP's desire to retain Cole Schotz in this matter and the parties engaged in a preliminary conversation.   Kiel alleges that the conversation was very brief because he was rushing to get to a meeting. Their accounts of the conversation are as follows:

### A.  The Nature of ADP's Business

Kantor alleges that she provided  Kiel with "specific background information "about ADP Dealer Services and ADP Commercial Leasing." (Kantor Dep. 20:9-10).   Kiel had difficulty

recalling many details the conversation, but did confirm discussing "what ADP does" and "the services that ADP provides." (Kiel Dep. 18:20-19:3).

### B. The Nature of ADP's Dispute with PMJ

Kantor alleges that she disclosed the "complex" history of ADP's dispute with PMJ. (Kantor Dep. 21:18). Kiel stated that Kantor told him: (i) there was a "potential matter involving a Florida auto Dealership" (Kiel Dep. 10:21-22) known as "PMJ" (Kiel Dep. 11:23-25); (ii) the case involved "some type of software that was developed by ADP" (Kiel Dep. 19:9-10); (iii) there were "some licensing fees that were due" (Kiel Dep. 19:11-12), totaling several hundred thousand dollars (Kiel Dp. 14:25-15:3); and (iv) "there had been discussions before with the parties about trying to settle the case" (Kiel Dep. 15:15-16) but now "it wasn't going to settle" (Kiel. Dep. 15:20-21).

### C. Disclosure of an Anticipated Counterclaim by PMJ

Kantor alleges that she disclosed the factual basis of a counterclaim that PMJ could file. (Kantor Dep. 34:10-13). According to Kantor, PMJ claimed that: "ADP had caused [its dealership] all these proble  And made all kids of wild accusations, one of which was that one of [ADP's] salesperson was having an affair with [PMJ's] office manager or controller . . . [and she] was able to bilk [PMJ] out of millions of dollars." (Kantor Dep. 25:5-10). Kantor also stated that she discussed the "strengths and weaknesses of the case, the counterclaim, the potential counterclaim . . ." (Kantor Dep. 33:4-7).

Kiel alleges that he and Kantor discussed: (i) ADP's belief that " the other side would probably file a counterclaim" (Kiel Dep. 15:3-4); (ii) "the nature of the counterclaim" (Kiel Dep. 22:4) involving allegations that "the software didn't do what it was supposed to do" (Kiel Dep.

3

22:2-3) and "some allegation about an intimate relationship between some of the parties" (Kiel Dep. 21:13-14); and (iii) ADP's belief that these "claims were without merit" (Kiel Dep. 30:22-23).

### D. Disclosure of ADP's Litigation Strategy

Kantor allegedly disclosed that (i) ADP "needed to move rather quickly" to file a complaint (Kantor Dep. 26:9-16); (ii) ADP "had a Florida counsel" that had "prepared a draft complaint" (Kantor Dep. 33:9-13), but it "was not as strong as [ADP] needed it to be" (Kantor Dep. 34:3); and (iii) there were "more claims" that ADP wanted to assert (Kantor Dep. 38:16-17).

Kiel alleges:

> [ Kantor told me] they were concerned that the other party may file down in Florida first. She also told me that they had Florida counsel, and I'm trying to remember this conversation, they had Florida counsel who may have drafted up a preliminary draft of the complaint already and would be able to use that as a framework so that would speed up the process to file the complaint. [Kiel Dep. 12:7-14].

### E. Disclosure of ADP's Settlement Position and Strategy

Kantor alleges that she disclosed (i) ADP's strong desire to settle this action (Kantor Dep. 25:13-16) because ADP predicted, based on its prior dealings with PMJ, that it "would be very litigious" (Kantor Dep. 26:23-27); (ii) that ADP will try to settle at every step (Kantor Dep. 27:12); (iii) that ADP sought to file the Complaint in New Jersey, hoping the threat of additional litigation costs PMJ would incur in trying this action here rather than in Florida would compel it to settle (Kantor 48:8-12); (iv) the percentage of settlement under the contracts that ADP is willing to accept (Kantor Dep. 48:25- 49:13); and (v) the concessions ADP is willing to make if PMJ files the anticipated counterclaim (Kantor Dep. 48:25- 49:13).

Kiel alleges that he does not remember discussing ADP's settlement position and strategy. Kiel does remember discussing ADP's desire to file the Complaint in this Court (Kiel Dep. 10:25-11:1) to "get jurisdiction here" (Kiel Dep. 11:16) under the "jurisdictional provisions in the contracts." (Kiel Dep. 18:17-19).

At the end of their conversation, Kantor informed Kiel that her supervisor, Randie Berman, would ultimately decide whether or not to retain Cole Schotz. Kantor stated that Kiel should speak with Berman directly to obtain a final decision on retention. Kantor and Kiel scheduled a telephone conference for the next morning with Berman and David Kohane, a Cole Schotz partner who Kiel recommended should represent PMJ because of his expertise in computer law. Kiel informed Kantor that Cole Schotz would have to conduct a conflict of interest check before agreeing to represent ADP in this matter.

Kantor and Kiel subsequently exchanged several emails. Kantor reiterated ADP's desire that new counsel move quickly to revise the Florida counsel's draft complaint and file it in this Court and listed the names and addresses of the parties to this action so that Kiel could conduct a conflict check. Kiel apologized for stepping away from their conversation to attend a meeting.

The next morning, on April 25, 2006, Kiel learned that Cole Schotz was representing a party adverse to an ADP subsidiary in a bankruptcy action. Kiel advised Kantor of the conflict. ADP declined to give Cole Schotz a conflict waiver and, instead, retained ADP's present counsel, Riker, Danzig, Scherer, Hyland & Perretti LLP.

On or about May 2, 2006, ADP filed the Complaint against PMJ. In June of 2006, Cole Schotz alleges that PMJ contacted its partner, Klein, and expressed an interest in retaining him as counsel in this action. Klein met with Kiel to discuss Kiel's conversation with Kantor and to

determine whether it created a conflict of interest.   Kiel alleges:

> I told [ Klein] that I had a conversation where we had some discussion about what the case was about.  I found out about the conflict he next morning and we didn't get into the sum or substance of what that conversation was. . . .  I said I didn't believe that any of the discussions we had were confidential.  [Kiel Dep. 50:16-24].

Klein decided to represent PMJ in this action and attempted to build an ethics screen around Keil by allegedly instructing him not to discuss the case with anyone in the firm. (Kiel Dep. 50:15-51:2).   Kiel stated that he does not recall any one in the firm sending a memo to Cole Schotz attorneys, advising them of the ethics screen and prohibiting them from discussing the case with Kiel.  (Kiel Dep. 51:10-19).  Cole Schotz did not seek written, informed consent to its representation of PMJ from ADP and PMJ.

Cole Schotz entered a formal appearance on June 30, 2006, by filing a motion for extension of time to answer.  This was the first time ADP learned that Cole Schotz is representing PMJ.  ADP did not object to Cole Schotz's representation of PMJ until October 16, 2006, when it sent a letter advising Cole Schotz of the conflict of interest and requesting that Cole Schotz withdraw as counsel.  Cole Schotz did not respond.  ADP subsequently sent three follow-up letters.  On November 16, 2006, Cole Schotz responded, stating that the firm does not have a conflict of interest and will not withdraw as counsel.

## **DISCUSSION**

ADP seeks to disqualify Cole Schotz from representing PMJ in this action.  The New Jersey Rules of Professional Conduct ("RPC") govern the conduct of attorneys admitted to

practice before this Court. L.Civ.R. 6A. "Motions to disqualify are viewed with disfavor as disqualification is a drastic remedy with often far-reaching, sometimes devastating implications." Essex Chemical Corp. v. Hartford Acc. & Indem. Co., 993 F.Supp. 241, 246 (D.N.J. 1998). Courts should decline to disqualify counsel, unless it is absolutely necessary. Alexander v. Primerica Holdings, Inc., 822 F.Supp. 1099, 1114 (D.N.J. 1993). "Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." 822 F. Supp. at 1114 (citing Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)).

RPC 1.18, entitled "Prospective Client," governs the present motion. It provides:

> (a) A lawyer who has had discussions in consultation with a prospective client shall not use or reveal information acquired in the consultation, even when no client-lawyer relationship ensues . . . [and]
>
> (b) . . . shall not represent a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (c).
>
> (c) If a lawyer is disqualified from representation under (b), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except that representation is permissible if (1) both the affected client and the former prospective client have given informed consent, confirmed in writing, or (2) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom and written notice is promptly given to the former prospective client.

### A. "Former Prospective Client"

Pursuant to RPC 1.18(d), "A person who discusses with a lawyer the possibility of

forming a client-lawyer relationship with respect to a matter is a 'prospective client,' and if no client-lawyer relationship is formed, is a 'former prospective client.'"

On April 24, 2006, Kantor, telephoned Kiel to discuss the possibility of retaining Cole Schotz as ADP's counsel in this action. Their actions during and subsequent to this conversation were aimed at forming a client-lawyer relationship. They discussed the nature of ADP's claims against PMJ. Then, they scheduled a telephone conference for the following morning between Berman, who makes the final decisions on retention of counsel and Kohane, a Cole Schotz partner who Kiel recommended to represent PMJ because of his expertise in computer law. That evening, Kantor and Kiel exchanged several emails, wherein Kantor provided Kiel with the names and addresses of the parties to this action, which he needed to conduct a conflict-of-interest check.

On April 25, 2006, Kiel conducted the conflict-of interest check, which revealed that Cole Schotz was representing a party adverse to another ADP subsidiary in a bankruptcy action. No client-lawyer relationship was formed. Therefore, ADP is Cole Schotz's "former prospective client."

### B. "Significantly Harmful" Information

Information exchanged during a preliminary consultation between a prospective client and an attorney may be "significantly harmful" under RPC 1.18 to warrant disqualification of that attorney from representing any party with interests adverse to the prospective client. KEVIN H. MICHELS, NEW JERSEY ATTORNEY ETHICS, THE LAW OF NEW JERSEY LAWYERING 21:2-3 (2007). However, to overcome the courts' disfavor of motions to disqualify, the moving party must proffer compelling evidence that significantly harmful information was disclosed.

ADP relies on the deposition testimonies of Kantor and Kiel to meet its heavy burden of proof. ADP argues that Kantor disclosed significantly harmful information during her one telephone conversation with Kiel.

Most of the information allegedly disclosed to Kiel is not significantly harmful to ADP. Kantor and Kiel generally agree discussing the nature of ADP's business, the history of its dispute with PMJ and the factual basis of an anticipated counterclaim. This information is not significantly harmful to ADP because it is not confidential. ADP disclosed the nature of its business and the history of its dispute with PMJ in the Complaint. Also, PMJ obviously knows the factual basis of its counterclaim.

Kantor and Kiel agree discussing ADP's desire to file the Complaint quickly by revising the draft complaint that ADP's Florida counsel had prepared. Cole Schotz cannot use this information to significantly harm ADP because at the time PMJ retained Cole Schotz as counsel, ADP had already filed the Complaint.

Most of the information Kantor allegedly disclosed regarding ADP's settlement position and strategy is not significantly harmful either. Kantor alleges disclosing (i) that ADP has a strong desire to settle this action and will try to settle it at every step; (ii) that ADP sought to file the Complaint in New Jersey, hoping that the threat of additional litigation costs PMJ would incur in trying this action here rather than in Florida would compel it to settle; (iii) the percentage of settlement under the contracts that ADP is willing to accept; (iv) and the concessions that ADP is willing to make if PMJ files the anticipated counterclaim.

Kiel denies discussing ADP's strong desire to settle. Even if this information were disclosed, it is not significantly harmful to ADP because it is not confidential. ADP's desire to

settle is evidenced from the numerous settlement discussions it had with PMJ.

Kiel confirms discussing ADP's desire to file the Complaint in this Court. This information is not significantly harmful to ADP because ADP already filed the Complaint in this Court and PMJ consents to this Court's jurisdiction over all but one clai <u>See</u> PMJ's Brief in Opposition to Motion to Disqualify, p. 18; Complaint, Tenth Affirmative Defense. PMJ only objects to this Court's jurisdiction over the replevin claim on the grounds that this Court does not have jurisdiction over personal property held in Florida.

Kiel denies discussing the percentage of settlement that ADP is willing to accept and the concessions that ADP is willing to make. If Kantor disclosed this information, Cole Schotz could use it to significantly harm ADP. However, PMJ's only evidence is Kantor's controverted deposition testimony. PMJ's evidence is not sufficiently compelling to overcome the Court's presumption against disqualifying counsel, except when absolutely necessary.

The circumstances surrounding Kantor and Kiel's conversation do not support Kantor's allegations. First, given the preliminary nature of the conversation, Kantor had no need to specify the percentage of settlement that ADP would accept or the concessions that ADP would make. Kantor did not have the final authority to retain Cole Schotz. The purpose of her phone call was to investigate whether Cole Schotz was interested in representing ADP and capable of proceeding quickly. Kantor could have accomplished her purpose by disclosing the nature and history of ADP's dispute with PMJ.

Second, the information at issue is highly confidential and, as such, it is improbable that Kantor had revealed it before Kiel conducted a conflict-of-interest check. Third, Kiel alleges that the conversation was brief. Kiel's allegation is buttressed by the email he sent to Kantor

10

shortly after they got off the phone, apologizing for stepping away from the conversation to attend a meeting.  Kiel raises a doubt as to whether Kantor had enough time to disclose all of the information that she purports to have disclosed.

In conclusion, ADP failed to prove that Kantor disclosed significantly harmful information.  Cole Schotz is not disqualified pursuant to RPC 1.18(b); therefore, I will not address whether its attempt to create an ethics screen satisfied RPC 1.18(c).

## **CONCLUSION**

For the reasons set forth above, the motion to disqualify counsel is hereby **DENIED**.

**SO ORDERED.**

s/ Ronald Hedges

---------------------------------------

United States Magistrate Judge


Original:	Clerk

cc:	All addresses

   	Hon. Peter G. Sheridan, U.S.D.J.

   	File